OVERTON, J.
Defendant desired to erect a plant for the manufacture of gasoline out of casing head gas, and undertook to obtain a supply of the latter. In his search defendant met plaintiff, who informed him, in response to his inquiries, that he (plaintiff) was in position to obtain for him, in the Caddo oil field, the required quality and quantity of gas. Defendant then made arrangements with plaintiff to test this gas both as to quantity and quality, and to procure, or assist in procuring, contracts for the *280 same, in the event the gas should be found to meet the required test. Tests were made of the gas, and plaintiff reported that the wells were producing 230,000 feet of gas a day, and that the gas was of the quality desired. Contracts were then entered into, with plaintiff’s assistance, for the gas produced by some of the wells tested. After these contracts had been executed, defendant erected the plant at a cost of $6,038.94. The plant was completed about August 1, 1915, and defendant began to operate it at once. No sooner had he begun operations, however, than he was seriously injured by an explosion that occurred, which necessitated his being taken to a hospital, where he remained for some six yeeks. While confined there, he sold a half interest in the plant to a personal friend, W. R. Spann. Spann attempted to operate the plant during a part of the time defendant was confined in the hospital. On October 6, 1915, defendant, Spann, and R. L. Beidenhorn organized the Central Oil & Gasoline Company, Inc. Spann and defendant sold the plant to the corporation for $15,000, talking stock for the purchase price, in equal proportions, or, at least, acquiring it in those proportions immediately after the formation of the corporation. The Central Oil & Gasoline Company operated the plant for some 9 or 10 months, when that company sold to White Bros., with whom plaintiff is connected, for $20,000.
Before the plant was constructed, and before the gas contracts above mentioned were executed, defendant gave plaintiff, it is said as a consideration for some options, the following instrument, to wit:
“Shreveport, La., 4/24/1915.
“3. W. White:
“As soon as the net profits of the plant to be erected near Oil City for the manufacturing of gasoline equals the cost of same you are to have one-eighth' of the net profits of same.
“[Signed] R. L. Crook.”
Very nearly a year after the erection of the plant, plaintiff instituted this suit for' the purpose of recovering judgment against defendant for one-eighth of the profits of the plant, basing his demand on the foregoing instrument, and praying that defendant be required to render an account of those profits. Defendant answered the suit, pleading, among other defenses, that the above instrument signed by him did not give plaintiff an interest in the plant; that, if the execution and delivery of the instrument created aiiy liability against him, the liability was only for one-eighth of the profits, after he (defendant) had been repaid the cost of the plant out of the profits of the business.
Plaintiff contends that he is entitled to a one-eighth interest in all of the profits made by the plant from the date it began operations until it was sold to White Bros. In other words, plaintiff’s contention seems to be, and in fact is, that the instrument, under consideration, entitles him to a one-eighth interest in the profits made from the beginning of operations, the moment the profits equaled the cost of the plant, as well as a one-eighth interest in those earned thereafter; while defendant, as we^ have observed, contends that, if the instrument created any liability against him, the liability is only for one-eighth of the profits earned, if any, after they have reached an amount sufficient to repay him the cost of erecting the plant; and, as- the plant has earned no such profits, plaintiff’s suit must fail.
[1] In our view, plaintiff’s position is untenable. A mere reading of the instrument shows that it was the clear intention of the parties that plaintiff should have no interest in the profits except in those made after the plant had earned sufficient above expenses to repay defendant the cost of constructing it.
The next question to be determined is whether the plant made any profits beyond the cost of its construction. In determining this question, we may assume for the purposes of this ease that defendant’s liability,. *282 under the foregoing instrument, was in no manner affected by the sales made to Spann and to the Central Oil & Gasoline Company, Inc., but still continued as if no such sales had been made. Even with this assumption in favor of plaintiff, in our view, he cannot recover, for the following reasons:
[2] The record discloses that the erection of the plant originally cost $6,038.84. However, it was soon found that, to make the plant pay, improvements were necessary. These improvements included an additional pipe line, costing $1,285.68, made necessary by the fact that the wells reported by plaintiff as producing 230,000 feet of gas a day produced only 80,000 feet from the time the plant began operations. The gas supply was, therefore, inadequate, and it became necessary to procure additional contracts for gas, in order to operate at a profit. These contracts were obtained and the new pipe line constructed to get the additiohal supply of gas to the plant. This improvement was therefore necessary to put the plant on a paying basis. Other improvements of a permanent nature were also made, costing $1,134.33. The evidence justifies the conclusion that these were necessary to operate the plant profitably. Hence, we think that their cost, and the cost of the new pipe line, should be added to the cost of the plant that the parties had in view when the above instrument was signed and delivered, for the reason that the instrument contemplated that a plant would be erected that would earn profits, and without those improvements, including the additional pipe line, no profits could be made.
[3] The cost of the pipe line and of the regaining improvements, added to the original cost of the plant, make its total cost $8,458.-85. The plant made no profits during the period that it was owned by defendant alone, and, due to a shortage of gas and to engine troubles it made none during the short period that it was owned by defendant and Spann. However, after the transfer to the Central Oil & Gasoline Company, Inc., which transfer took place about'the time the additional gas supply was obtained, and the riew pipe line constructed, and the remaining improvements made, the plant, though under the shine management that it had been before, began to prosper. During that period its-profits amounted to $7,837.36, a sum less than" the cost of the construction of the plant, when the additions and improvements necessary to bring the plant to the standard-contemplated by the foregoing instrument are included. Therefore, since the plant has not earned profits equal' to its cost as above con-sidered, and as it is clear that the profits made by selling the plant are not those contemplated by the contract, plaintiff is not entitled to a - judgment. It may be said in this connection that it is not contended by plaintiff that defendant is liable to him for one-eighth of the profits that may have been made by White Bros.
In conclusion, we may say that plaintiff suggests in his brief that the evidence considered as a whole shows that a partnership was formed between him and defendant, which gave the latter a one-eighth interest in all the profits. The evidence, however, in our opinion, does not give the least support to such a view.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed at appellant’s costs.
Rehearing denied by Division B, composed of DAWKINS, DAND, and LECHE, JJ.